# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JOYCE HUMPHRIES

 Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

 Defendant.

No. 14 CV 1608

Magistrate Judge Mary M. Rowland

# MEMORANDUM OPINION AND ORDER

Plaintiff Joyce Humphries filed this action seeking reversal of the final decision of the Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision and remand for additional proceedings. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

2d 973, 978 (N.D. Ill. 2001).[1] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on October 3, 2011, alleging that she became disabled on November 4, 2010, due to congestive heart failure with pacemaker and defibrillator, high blood pressure, and high cholesterol. (R. at 92). The application was denied initially on January 24, 2012, and upon reconsideration on May 18, 2012. (*Id.* at 81–82). Plaintiff filed a timely request for a hearing on June 1, 2012. (*Id.* at 101–02). On November 9, 2012, Plaintiff, not represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) in Orland Park, Illinois. (*Id.* at 40–80). The ALJ also heard testimony from Julie Bose, a vocational expert (VE), and Delores Barton, Plaintiff's sister. (*Id.*).

The ALJ denied Plaintiff's request for benefits on December 5, 2012. (R. at 25–34). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff engaged in substantial gainful activity from January 17–21, 2011. (*Id.* at 27).[2] However, the ALJ found that there has been a "continuous 12-month period during which the claimant did not engage in substantial gainful activity" and his findings address the period [Plaintiff] did not engage in substantial gainful activity. (*Id.* at 28). At step two, the ALJ found that Plaintiff's cardiac impairments consisting of congestive heart failure/cardiomyopathy with defibrillator

---

[2] Plaintiff reported in her Work Activity Report that she returned to work at F.C. Stone from January 17–21, 2011, earning $903 in January 2011, $1,806 in February 2011, $1,700 in March 2011, $1,700 in April 2011, $1,700 in May 2011, and $1,300 in June 2011. (R. at 205–06). Plaintiff's earnings record showed $16,327.87 for employment at F.C. Stone in 2011. (*Id.* at 169). The ALJ concluded that substantial gainful activity levels in 2011 is $1,000 per month, "thus [Plaintiff's] work activity from January 17, 2011 to June 21, 2011 is at substantial gainful activity level." (*Id.* at 27).

placement, left bundle branch block, hypertension, and high cholesterol are severe impairments. (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 30). The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and determined that she could perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (*Id.* at 30–33). Based on the RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is capable of performing past relevant work as a compliance assistant and administrative assistant. (*Id.* at 33). Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Act, from November 4, 2010, through the date of his decision. (*Id.* at 34).

The Appeals Council denied Plaintiff's request for review on January 31, 2014. (R. at 1–3). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regula-

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

tions. Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." Id. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." Id. (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." Indoranto v. Barnhart, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence must be more than a scintilla but may be less than a preponderance." Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." Young, 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).

## IV. MEDICAL EVIDENCE

Plaintiff has a medical history significant for hypertension, congestive heart failure, chronic systolic, and dyslipidemia. (R. at 285). On November 7, 2010 Plaintiff visited the emergency room at St. James Hospital Health Center with symptoms of chest pain, fatigue, lack of energy, and had a fainting spell. (*Id.* at 284–85). She was admitted to the hospital for five days. Faheem Ahmad, M.D., a cardiologist, diagnosed unstable angina[4] and hypertension. (*Id.* at 287-88). An echocardiogram (ECG) revealed moderate to severe mitral regurgitation, mild tricuspid regurgitation, and an estimated ejection fraction of 25%.[5] (*Id.* at 289, 500, 504). Plaintiff was diagnosed with non-ischemic dilated cardiomyopathy and Adarsh Bhan, M.D., a cardio-surgeon, performed cardiac resynchronization therapy defibrillator implantation surgery on November 9, 2010. (*Id.* at 291–93). On November 22, 2010, Plaintiff returned to the emergency department with complaints of fatigue, difficulty sleeping, and chest pressure. (*Id.* at 375, 392). A portable frontal chest cardiogram showed stable cardiomegaly (enlarged heart). (*Id.*). Plaintiff was diagnosed with dyspnea, given 40mg of Lasix, and discharged to follow up with her cardiologist. (*Id.* at 378–79, 381–82).

---

[4] Unstable angina is a condition in which the heart does not get enough blood flow and oxygen. https://www.nlm.nih.gov/medlineplus/ency/article/000201.htm.

[5] Ejection fraction is a measurement of the percentage of blood leaving the heart each time it contracts. A left ventricle (LV) "ejection fraction of 55 percent or higher is considered normal. An LV ejection fraction of 50 percent or lower is considered reduced." http://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286.

On November 23, 2010, Dr. Ahmad diagnosed mild peripheral edema and chronic systolic heart failure, "mostly in functional Class II, sometimes in Class III"[6] and prescribed Lasix and K-Dur. (R. at 478). On December 3, 2010, Dr. Ardash Bhan opined that Plaintiff could "resume all her regular activities." (*Id.* at 56, 569–70). Plaintiff returned to work at F.C. Stone from January 17 through June 21, 2011, when she was terminated. (*Id.* at 50–52).

Plaintiff visited Dr. Ahmad for follow-up appointments in January 2011, May 2011, and August 2012. (R. at 543–46). In January 2011, Plaintiff complained of occasional discomfort at the battery site of the defibrillator believed to be due to her bra rubbing on the wound site. (*Id.* at 546). On May 3, 2011, Dr. Ahmad observed no symptoms of chest pain or shortness of breath. (*Id.* at 545). Plaintiff returned to the emergency room on October 20, 2011. Dr. Ahmad diagonsed atypical chest pain, dyslipidemia, dilated cardiomyopathy, and chronic systolic heart failure currently compensated. (*Id.* at 404). On August 17, 2012, Dr. Ahmad noted Plaintiff "had a defibrillator shock approximately one month ago" and concluded that she is "mostly in function class II, sometimes function III." (*Id.* at 543). In an undated Physical Capacities Evaluation, Dr. Ahmad opined that Plaintiff could sit for two hours and stand/walk for one hour in an eight-hour workday. (*Id.* at 613–14).

---

[6] The New York Heart Association (NYHA) Functional Classification "places patients in one of four categories based on how much they are limited during physical activity." Functional Class II: Slight limitation of physical activity. Comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea (shortness of breath). Functional Class III: Marked limitation of physical activity. Comfortable at rest. Less than ordinary activity causes fatigue, palpitation, or dyspnea.
http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM_306328_Article.jsp#.Vi_NqLerTIU.

Plaintiff testified that on a typical day she is "up and about" around 8:00 a.m., "straightens up," makes her own meals, may go out to take care of business, goes out for volunteer work and to the store, attends doctors' appointments, or naps "depending on the course of the day." (R. at 59). She has to sit in between completing tasks at home such as cleaning her kitchen. (*Id.* at 57–58). She does house chores like vacuuming, cleaning the stove, and mopping the floor; she may start cleaning for about an hour and then she has to sit down for about 15 to 20 minutes before continuing her task; and it takes her a long time to complete tasks because she has to stop and sit down to rest at intervals. (*Id.* at 58, 232, 238). Plaintiff is a Jehovah's Witness and walks door to door "maybe twice a week" for about an hour and a half. (*Id.* at 58–59). She reported that she has to rest for 10 to 15 minutes after walking a block at a time. (*Id.* at 236). Plaintiff rests and naps after her volunteer work "due to weakness and fatigue." (*Id.*).

On November 20, 2011, State agency consultative psychologist, J.B. Goebel, Ph.D., reported "understanding memory mildly impaired, sustained concentration and persistence moderately impaired." (R. at 516, 529). On January 11, 2012, State agency nonexamining psychologist, Donald Cochran, Ph.D., opined that Plaintiff's descriptions of activities of daily living (ADL) show that she is "not significantly limited due to mental condition." (*Id.* at 529). Further, Dr. Chochran concluded that the mental status exam (MSE) "shows mild memory impairment and moderately impaired concentration and persistence. Overall, [Plaintiff's] statements regarding mild symptoms and limitations due to a mental condition are partially supported

and partially credible." (*Id.*). Reviewing State agency physician Bharati Jhaveri, M.D., opined that Plaintiff could "stand and/or walk (with normal breaks) for a total of at least 2 hours in an 8 hour workday." (*Id.* at 532). Dr. Jhaveri further concluded that Plaintiff could, "sit (with normal breaks) for a total of about 6 hours in an 8-hour work day." (*Id.*). Dr. Jhaveri opined that Plaintiff has "a cardiac condition that would reasonably limit some of her activities, however, her statements regarding symptoms and limitations are a little excessive when compared to the objective medical information in file and given partial weight." (*Id.* at 536, 538). Reviewing State agency physician Vidya Madala, M.D., opined that Plaintiff "is not limited daily due to a mental condition," and a psychiatric evaluation revealed mild impairment with understanding and memory and sustained concentration and persistence moderately limited. (*Id.* at 541). Dr. Madala found Plaintiff's statements regarding symptoms and limitations to be "a little excessive" when compared with the objective medical information and "given partial weight."(*Id.*).

## V. DISCUSSION

Plaintiff raises three arguments in support of her request for a reversal: (1) the ALJ improperly weighed the opinion of Dr. Ahmad, Plaintiff's treating physician; (2) the ALJ's RFC determination was erroneous; (3) and the ALJ's credibility determination was patently wrong.

## A. The ALJ Did Not Properly Evaluate Dr. Ahmad's Opinion.

Plaintiff contends that the ALJ improperly rejected Dr. Ahmad's opinion regarding the severity of her cardiac impairment and the functional limitations attributed to her severe impairment. (Mot. at 6).

By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *accord Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1)) (other citation omitted). If the treating physician's opinion "is well supported and there is no contradictory evi-

dence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (citation omitted). "Thus, to the extent a treating physician's opinion is consistent with the relevant treatment notes and the claimant's testimony, it should form the basis for the ALJ's determination." *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) (citation omitted). In determining what weight to give a treating physician's opinion, an ALJ shall "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

The ALJ rejected Dr. Ahmad's opinion concluding:

> I reject the treating source statement (from Dr. Faheem Ahmad) since it is undated and not supported by Dr. Ahmad's own clinical findings or by good reports of no complaints. Also, [Plaintiff] essentially admitted a greater level activity than the doctor opined. Dr. Ahmad concluded that she could stand/walk for only 1 hour and needed to alternate sitting and standing. However, [Plaintiff] testified that she talks to people door to door twice a week for 1½ hours. I give her surgeon's (Dr. Adarsh Bhan) opinion great weight. Dr. Bhan said as early as about a month after surgery that the claimant could resume regular activities. In January 2011, she did resume work (for five months before her termination).

(R. at 33) (citations omitted).

Plaintiff began treating with Dr. Ahmad in November 2010. (R. at 288). Over the next two years Dr. Ahmad treated Plaintiff's cardiac condition. (*Id.* at 60, 63–66, 288–90, 295–96, 393–404, 406–08, 413–14, 418–19, 421, 435–37, 442–43, 468–71, 473–76, 478–81, 543–46). In November 2010, Dr. Ahmad diagnosed Plaintiff with

mild peripheral edema and chronic systolic heart failure in "mostly functional class II, sometimes class III." (*Id.* at 478). In August 2012, Dr. Ahmad opined that Plaintiff had non-ischemic dilated cardiomyopathy, dyslipidemia, and hypertension and "she is mostly in a function class II, sometimes function class III." (*Id.* at 543). In an undated physical capabilities evaluation, Dr. Ahmad opined that during an entire eight-hour work day Plaintiff could sit for two hours, stand/walk for one hour, and she needed to alternate sitting and standing throughout the work day. (*Id.* at 613–14).

Under the circumstances, the ALJ's decision to give Dr. Ahmad's opinion no weight is legally insufficient and not supported by substantial evidence. First, the ALJ stated, "I reject the treating source statement . . . since it is undated." (R. at 33). Although Plaintiff bears the burden of proving disability, the ALJ has a duty to develop a full and fair record. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). The ALJ pointed out the lack of date in rejecting Dr. Ahmad's opinion. (R. at 33). The ALJ did not afford Dr. Ahmad's opinion controlling weight in part because the functional capacity report was undated, but the ALJ had a duty to solicit additional information from Dr. Ahmad if the missing date was a determinative factor in his decision to reject Dr. Ahmad's opinion. *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (noting that "an ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable"); *see also Smith*, 231 F.3d at 437 (finding that part of the ALJ's duty to develop the record included soliciting up-

dated medical records when the ALJ discounted the functional limitations set forth by the treating physician). Additionally, the ALJ's duty is enhanced when a Plaintiff appears without counsel at a hearing, as Plaintiff in the present case did; then, the ALJ must "'scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts.'" *Thompson,* 933 F.2d at 585–86 (quoting *Smith v. Sec. of Health, Educ. & Welfare,* 587 F.2d 857, 860 (7th Cir. 1978)); *see Nelson v. Apfel,* 131 F.3d 1228, 1235 (7th Cir. 1997); (*see also* R. at 42–43).

Second, the ALJ concluded that Dr. Ahmad's opinion was "not supported by Dr. Ahmad's own clinical findings." (R. at 33) The report opines on Plaintiff's inability to work a productive eight-hour work day and her inability to stand and/or walk for more than one hour or sit for longer than two hours. The ALJ rejects this opinion, finding it is inconsistent with Dr. Ahmad's previous treatment notes. (*Id.* at 33, 613–14). Yet, the ALJ does not specify which notes. In a November 2010 letter, Dr. Ahmad opined that Plaintiff was "mostly in functional class II, sometimes in functional class III" and that her condition was "chronic systolic heart failure, functional class II to III." (*Id.* at 478). In an August 2012 letter, Dr. Ahmad again opined that Plaintiff was "mostly in function class II, sometimes in function class III." (*Id.* at 543). The restrictions of a classification in a functional class II ("Slight limitation of physical activity. Comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea") and sometimes class III ("Marked limitation of physical activity. Comfortable at rest. Less than ordinary activity causes fatigue, palpitation, or

dyspnea")[7] appear consistent with Dr. Ahmad's opinion in his report. The ALJ cannot discuss only those portions of the record that support his opinion. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence.") (citations omitted); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion."). Instead, the ALJ must consider all relevant evidence, and may not choose to disregard certain evidence or discuss only evidence that favors his or her decision. *See Herron v. Shalala*, F.3d 329, 334 (7th Cir. 1994). Since it is completely unclear what records the ALJ relied on when he stated the report is not supported by Dr. Ahmad's "own clinical findings or by good reports of no complaints" (R. at 33), the ALJ failed to "build a logical bridge from the evidence to [his] conclusion," *Steele*, 290 F.3d at 941.

Next, the ALJ rejected Dr. Ahmad's opinion, noting Plaintiff "admitted a greater level of activity than the doctor opined." (R. at 33). The ALJ relied on Plaintiff's testimony that she walked door to door twice a week for 1½ hours. (*Id.*). Plaintiff admitted at the hearing that she "may go out for about, much as I could do is probably an hour, hour and a half, that's it . . . an hour and half a day maybe twice a week." (*Id.* at 58–59). The ALJ does not explain how Plaintiff's activity of walking 1½ hours a day twice a week is inconsistent with Dr. Ahmad's opinion of her inability to work full time in an eight-hour work day. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th

---

[7] *See* NYHA Functional Classification, *supra* n.6.

Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."). Further, Plaintiff reported that she has to rest for 10 to 15 minutes after walking a block and rests and naps after her volunteer work "due to weakness and fatigue." (*Id.* at 236). While the nature of personal activities is such that one can often readily attain accommodations, the modern workplace is far less forgiving. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.").

Lastly, the ALJ rejected Dr. Ahmad's opinion because it was inconsistent with Dr. Bhan's statement that "as early as about a month after surgery [Plaintiff] could resume regular activities." (R. at 33). The Commissioner asserts that this release contradicts Dr. Ahmad's opinion and therefore the "ALJ properly resolved the treating physician opinions within his discretion as the finder of fact." (Resp. at 6). In December 2010, Dr. Bhan noted the following recommendations: "May resume all her regular activities at this time"; "Regular follow up at the device clinic" and "Heart failure therapy and further risk factor modification per Dr. F. Ahmad." (R. at 570). The ALJ failed to address the part of Dr. Bhan's recommendation that defers monitoring of Plaintiff's heart condition to Dr. Ahmad, and an ALJ cannot discuss only those portions of the record that support his opinion. *See Myles*, 582 F.3d at 678 ("An ALJ may not selectively consider medical reports, especially those of treat-

ing physicians, but must consider all relevant evidence. It is not enough for the ALJ to address mere portions of a doctor's report.") (citations omitted); *Murphy*, 496 F.3d at 634 ("An ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion."). The ALJ offered no explanation for adopting only portions of Dr. Bhan's opinion even though he afforded Dr. Bhan "great weight." (R. at 33).

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reevaluate the weight to be afforded the treating physician's opinions. If the ALJ has any questions about whether to give controlling weight to Dr. Ahmad's opinion, he is encouraged to re-contact him, order a consultative examination, or seek the assistance of a medical expert. *See* Social Security Ruling (SSR)[8] 96-5p, at \*2; 20 C.F.R. §§ 404.1517, 416.917, 404.1527(e)(2)(iii), 416.927(e)(2)(iii); *see also Barnett*, 381 F.3d at 669 ("If the ALJ thought he needed to know opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by

---

[8] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); see 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

subpoenaing the physician or submitting further questions to them.") (citation omitted). If the ALJ finds "good reasons" for not giving the opinion controlling weight, see *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010), the ALJ shall explicitly "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion," *Moss*, 555 F.3d at 561, in determining what weight to give the opinions. See also *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) ("Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it. Rather, the ALJ is required by regulation to consider certain factors in order to decide how much weight to give the opinion.").

### B. The ALJ's RFC Determination Did Not Properly Account for Plaintiff's Mental Impairment.

The ALJ found that Plaintiff has the RFC to perform the full range of sedentary work. The ALJ concluded that Plaintiff's allegations of mental impairments are not supported by the medical records. (R. at 32). "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical

evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

The ALJ failed to consider the effects of Plaintiff's mental impairments, resulting from her cardiac impairments, on her ability to perform full-time work. In determining that there are no signs of mental impairments, the ALJ gave great weight to the examining consultative psychologist, Dr. Goebel, explaining that his opinions are supported by medical records. (R. at 33). Although Dr. Goebel did not find Plaintiff to have a medically determinable impairment, he did find Plaintiff to be moderately limited in concentration and persistence and mildly limited in memory. (*Id.* at 516). Additionally, the nonexamining consultant, Dr. Cochran, adopted Dr. Goebel's determination that Plaintiff has a mild memory impairment and moderate concentration and persistence impairments. (*Id.* at 529). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. , as

amended Aug. 20, 2014); *see Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) ("We keep telling the Social Security Administration's administrative law judges that they have to consider an applicant's medical problems in combination.") (collecting cases).

For the reasons stated herein, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall account for Plaintiff's documented limitations in concentration and persistence and mildly limited memory and the limitations it may have on her ability to perform full-time work.

## C. Other Issues

Because the Court is remanding on the treating physician and mental RFC issues, the Court chooses not to address Plaintiff's credibility argument. Nevertheless, on remand, the ALJ will reassess Plaintiff's credibility with due regard for the full range of medical evidence. The ALJ shall then reevaluate Plaintiff's mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security and remand for additional proceedings [15] is **GRANTED**. Defendant's Motion for Summary Judgment [22] is **DENIED.** Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case

is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: December 21, 2015

MARY M. ROWLAND
United States Magistrate Judge